# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS FELIPE CASAS CASTRILLON,<br><br>                                Petitioner,<br>  vs.<br><br>DEPARTMENT OF HOMELAND SECURITY, et al.,<br><br>                               Respondents. | CASE NO. 05CV1552-BEN (NLS)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS (Docket Nos. 1, 18)** |

Petitioner, LUIS FELIPE CASAS CASTRILLON ("Petitioner"), a citizen and native of Colombia, has filed a petition for a writ of habeas corpus ("Petition") pursuant to 28 U.S.C. § 2241.[1] Petitioner claims that the Department of Homeland Security has custody of his person in violation of Title 8 U.S.C. § 1231(a)(6). In this present Petition, Petitioner does not challenge the validity of his removal order or the underlying state court convictions. Rather, Petitioner seeks release from Department of Homeland Security ("DHS") custody because DHS has not effectuated his timely removal pursuant to *Zadvydas v. Davis*, 533 U.S. 678 (2001).

---

[1] "The relevant statute, 28 U.S.C. § 2241, provides that a writ of habeas corpus shall only be granted if 'a prisoner' is in custody under the authority of the United States 'in violation of the Constitution or laws or treaties of the United States.' Although the statute is commonly used by federal prisoners detained on criminal charges, it has also been employed, both historically and in its current form, by aliens detained for immigration law enforcement purposes." *Armentero v. I.N.S.*, 340 F.3d 1058, 1061 (9th Cir. 2003); *see also, Zadvydas v. Davis*, 533 U.S. 688 (2001) ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").

Under *Zadvydas,* an alien in custody for more than six months after his/her removal order becomes final can seek release, but only upon a showing that "there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701. The circumstances of the instant action, however, are not remotely comparable to those at issue in *Zadvydas*, where the government was unable to find a country to which the petitioners therein could be deported. In contrast, the sole reason for the government's delay in Petitioner's deportation is because Petitioner has sought, and received, numerous stays of removal from both the district court and the Ninth Circuit. Therefore, for the reasons that follow, the Petition is **DENIED**.

## I.  BACKGROUND

Petitioner is a native and national of Columbia. On April 17, 1989, Petitioner was granted temporary resident status and then subsequently granted permanent resident status on September 18, 1990. On January 26, 1993, Petitioner was convicted in California state court of Second Degree Burglary, in violation of Section 459 of the California Penal Code, and was sentenced to 180 days in jail. On May 4, 2000, Petitioner was convicted of a second violation of Section 459 of the California Penal Code, and was sentenced to three years imprisonment.

On August 8, 2001, Petitioner was served with a Notice to Appear and charged with deportability pursuant to Section 237(a)(2)(A)(ii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(ii). That section provides for removal of an alien who after admission has been convicted of two crimes of moral turpitude. Petitioner was taken into DHS custody after completion of his state term of imprisonment on August 1, 2001.

On January 16, 2002, an Immigration Judge ("IJ") ordered Petitioner removed to Columbia, and denied Petitioner's requests for asylum, withholding of removal, cancellation of removal, and relief under the Convention Against Torture. Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), which upheld the IJ's removal order on July 19, 2002.

Petitioner then had thirty days from the BIA's decision (until August 19, 2002) to seek direct review with the court of appeals. *See* 8 U.S.C. § 1252(b)(1). Instead, Petitioner sought habeas relief in district court on October 11, 2002. *Casas-Castrillon v. Gonzalez*, Case No. 02CV2020 (S.D. Cal.). However, the district court transferred the case to the Ninth Circuit for

1  direct review. The Ninth Circuit gave Petitioner an opportunity to explain why the petition for
2  review should not be dismissed for untimeliness. On April 19, 2004, the Ninth Circuit ultimately
3  dismissed the petition for lack of jurisdiction. *Casas-Castrillon v. Gonzalez*, Case No. 03-73037
4  (9th Cir.), *cert. denied,* 544 U.S. 910 (2005). The Ninth Circuit denied Petitioner's motion for
5  reconsideration, and on October 25, 2004, ordered that no further filings would be accepted.

6  With his direct review of the BIA order finally terminated in March 2005, Petitioner could
7  have been removed to Columbia at that time. However, to this date, Petitioner's removal has yet
8  to happen. Petitioner has filed multiple challenges to his removal in both the district court as well
9  as the Ninth Circuit. Petitioner has challenged both the merits of his removal order and the
10 validity of his state court convictions upon which the removal order was based. In doing so,
11 Petitioner has successfully managed to delay his deportation through a series of district court and
12 Ninth Circuit stays.

13 This Court notes that many of Petitioner's challenges are duplicitous of one another and
14 have resulted in the prolonging of his deportation. On April 7, 2004, Petitioner challenged his
15 removal order by collaterally attacking his underlying "1996"[2] conviction. *Casas-Castrillon v.*
16 *Ashcroft*, Case No. 04CV0711 (S.D. Cal.). On April 13, 2004, the Court dismissed the petition on
17 the ground that a petitioner "may not collaterally attack his state court conviction in a habeas
18 challenge proceeding against the INS."  Petitioner did not appeal.

19 On April 26, 2004, Petitioner filed a habeas petition challenging the "1996" conviction
20 under Title 28 U.S.C. § 2254. *Castrillon v. Warden San Diego*, Case No. 04CV0875 (S.D. Cal.).
21 The Court dismissed the petition on May 10, 2004, because Petitioner did not satisfy the custody
22 requirement of the statute in that he was in DHS custody and not state custody. Petitioner did not
23 appeal.

24 On May 21, 2004, Petitioner filed another habeas petition challenging his "1996" state
25 court conviction, once again under Title 28 U.S.C. § 2254. *Casas Castrillon v. Warden*, Case No.
26 04CV1046 (S.D. Cal.). The Court denied the petition on June 3, 2004, on the same custody
27 grounds referenced in the Court's earlier order. Petitioner appealed that decision to the Ninth
28

---

[2] Presumably, Petitioner was referring to either his 1993 or 2000 conviction.

1  Circuit, and that appeal remains pending. No. 04-56262. Counsel for Petitioner was appointed in
2  that case on October 19, 2005, and briefing was finalized on November 9, 2006.

3  On March 17, 2005, Petitioner filed a habeas petition challenging the application of the
4  "stop time" provision of 8 U.S.C. § 1229b(d)(1) with respect to his 1993 conviction and also made
5  a claim for ineffective assistance of counsel. *Casas v. Najera*, Case No. 05CV543 (S.D. Cal). The
6  case was transferred to the Ninth Circuit pursuant to the REAL ID Act on June 8, 2005. That
7  appeal is still pending. No. 05-73553. Pursuant to Circuit Rule No. 6.4(c), that appeal triggered a
8  stay of removal pending a ruling by the Ninth Circuit on Petitioner's motion for a stay. The
9  temporary stay of removal was confirmed as a full stay on June 9, 2006. Counsel for Petitioner
10 was appointed in that case on August 3, 2006, and briefing was completed on May 16, 2007.

11 On April 11, 2005, Petitioner filed another habeas petition challenging the validity of his
12 1993 state court conviction. *Casas v. Waqner*, Case No. 05CV0755 (S.D. Cal.). In that petition,
13 Petitioner alleged that he was denied due process on the grounds that the state court judge
14 apparently failed to advise him of the immigration consequences of his plea. Petitioner also made
15 an additional claim of ineffective assistance of counsel. Petitioner sought a stay of removal, which
16 the court granted on April 13, 2005, pending resolution of the petition. On June 7, 2005, the Court
17 denied the petition and dismissed the case on the ground that a petition under 28 U.S.C. § 2241
18 against the INS could not be used to attack the validity of a state court conviction. Petitioner
19 appealed that decision to the Ninth Circuit, and that appeal remains pending. No. 05-56158.
20 Pursuant to Circuit Rule No. 6.4(c), that appeal also triggered a stay of removal pending a ruling
21 by the Ninth Circuit on Petitioner's motion for a stay. The temporary stay of removal remains in
22 effect, as the Ninth Circuit has not acted on the government's motion in opposition to the stay.
23 Petitioner's motion for appointment of counsel for that case was denied, and the briefing was
24 finalized on April 28, 2006.

25 On June 7, 2005, the Court also ordered Petitioner's above case (Case No. 05CV0755)
26 reopened as a 28 U.S.C. § 2254 petition. *Casas v. Waqner*, No. 05CV1197 (S.D. Cal.) A stay of
27 removal was ordered on June 7, 2005, pending resolution of the petition. Subsequently, on June
28 30, 2005, the Court denied the petition, again on the ground that Petitioner was no longer in state

1  custody and thus could not challenge the conviction. Petitioner appealed that decision to the Ninth
2  Circuit, but the Court terminated the appeal at the outset. No. 05-56171.
3       On August 4, 2005, Petitioner filed the instant Petition pursuant to 28 U.S.C. § 2241.
4  Petitioner seeks to be released from custody on grounds that his detention is unlawful in light of
5  *Zadvydas,* and violates his right to due process. The government opposes the motion.
6       In summary, eight petitions for habeas relief have been filed before this Court by the
7  Petitioner. Additionally, six appeals have been filed by Petitioner in the Ninth Circuit. Three of
8  those appeals remain pending and the briefing schedule has been completed in all three of the
9  remaining appeals.

10  **II. DISCUSSION**

11       In the ordinary course, an alien subject to a final order of removal must be removed from
12  the country within 90 days after the removal order becomes final. 8 U.S.C. §§ 1231(a)(l),
13  1231(a)(3). However, an alien can be held beyond the normal 90 day removal period when the
14  Attorney General determines the alien "to be a risk to the community or unlikely to comply with
15  the order of removal, [then the alien] may be detained beyond the removal period and, if released,
16  shall be subject to the terms of supervision in [8 U.S.C. § 1231(a)(3)]." 8 U.S.C. § 1231(a)(6).
17  This provision is not without limitation, however, and does not permit the Attorney General to
18  indefinitely detain aliens.
19       Under *Zadvydas,*[3] the Supreme Court explained that an alien in custody for more than six
20  months after his/her removal order becomes final can seek release, but only upon a showing that
21  "there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at
22  701. The Supreme Court's effort to promote uniformity by providing a presumptively reasonable
23  period of detention "does not mean that every alien not removed must be released after six months.

---

[3] In *Zadvydas*, two resident aliens challenged the constitutionality of their post-removal order detentions under the Immigration and Nationality Act ("INA") § 241(a)(6), 8 U.S.C. § 1231(a)(6), because, although no country was willing to accept them, the government continued to detain them years after the expiration of the 90-day removal period. *See* 533 U.S. at 684-86. The Supreme Court stated that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Id.* at 690. Applying the constitutional avoidance doctrine, the Court held that INA § 241(a)(6), "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal" and "does not permit indefinite detention." *Id.* at 689.

To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* The burden is placed wholly upon the petitioner to make this showing. *Id.* If the petitioner meets this burden, the government must then produce sufficient evidence to rebut petitioner's showing. *Id.*

Petitioner's claim that he is being held in violation of *Zadvydas* lacks merit because he has not demonstrated that his removal to Columbia is not significantly likely in the reasonably foreseeable future. *See id.* As indicated in the record, DHS is able to secure travel documents for Petitioner from Columbia.[4] Therefore, the circumstances of the instant action are not remotely comparable to those at issue in *Zadvydas*, where the government was unable to find a country to which the petitioners therein could be deported. The only real impediment to Petitioner's removal is the pending Ninth Circuit appeals and related stays of removal. Once the Ninth Circuit decides the three remaining appeals, DHS will either remove or release the Petitioner. Final decisions are undoubtedly forthcoming, as the briefing schedule is complete in each of the three remaining appeals. Thus, contrary to the petitioners in *Zadvydas*, Petitioner's detention is neither "indefinite" nor "potentially permanent." *Id.* at 690-91.

Petitioner asserts two additional challenges to his detention under *Zadvydas,* which warrant some discussion. Petitioner first argues that prolonged detention on appeal can essentially amount to indefinite detention under *Zadvydas*. In support of that argument, petitioner relies on two recent Ninth Circuit decisions, *Nadarajah v. Gonzales*, 443 F.3d 1066 (9th Cir.2006) and *Tijani v. Willis*, 430 F.3d 1241 (9th Cir.2005). In *Nadarajah*, the Ninth Circuit found the five-year detention of a refugee whose case was pending before the Attorney General to be unreasonable. 443 F.3d at 1080. Similarly, in *Tijani*, the court ordered an Immigration Judge to release the petitioner on bail unless the Government could prove he was a flight risk or a danger to the community where he had been detained pending appeal for two years and eight months under INA § 236(c). 430 F.3d at 1242.

---

[4] This was not always the case. Prior to November 18, 2005, Petitioner continually refused to complete the Columbia Consulate travel document application. The Consulate of Columbia does not issue a travel document without the alien's signature and thumbprint, which Petitioner refused to comply with. However, Petitioner finally did comply by signing the necessary travel application on November 18, 2005. The remaining travel documentation will be finalized once all appeals have been completed. At that time, Petitioner should be able to repatriate to Columbia without delay.

1          Neither of these cases are relevant because Petitioner's situation is clearly distinguishable
2  from that of the petitioners in *Nadarajah* and *Tijani*. First, unlike *Nadarajah*, the length of
3  Petitioner's detention is not due to the Attorney General's significant delay, but rather to his many
4  appeals, and related stays of removal, which unquestionably take time to resolve. Further, unlike
5  *Tijani*, Petitioner is not being held under INA § 236(c). More importantly, unlike *Zadvydas*,
6  Petitioner's detention has a definite end-point. When the Ninth Circuit decides his case, Petitioner
7  will either be released, or removed to Columbia.

8          Although Petitioner tries hard, he cannot squeeze his case into the confines of *Zadvydas*.
9  There is significant evidence in the record that, unlike the detainees in *Zadvydas*, Petitioner
10 himself is responsible for his continued detention. The Petitioner has essentially prevented the
11 government from implementing his removal by filing the various collateral challenges and refusing
12 to cooperate with DHS's removal efforts. It is axiomatic to this Court that *Zadvydas* does not
13 apply to situations where the alien himself prevents his own removal. This is especially true when
14 the prolonged detention is a result of numerous requested stays of removal, and a overall failure to
15 cooperate by the Petitioner.

### III.    CONCLUSION

An alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701. Since Petitioner has not shown that there is no significant likelihood of removal in the reasonably foreseeable future, his Petition is **DENIED**. (Doc. Nos. 1, 18).

**IT IS SO ORDERED.**

DATED: August 15, 2007

_____
Hon. Roger T. Benitez
United States District Judge

cc: All parties and respective counsel